UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
PHIL NEUMAN,

                Plaintiff,

    -against -

GLOBAL SECURITY SOLUTIONS,
INC. and WERNER HELLMANN,

                Defendants.
------------------------------------------------------x

Case No.: 1:21-cv-01670

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

Plaintiff PHIL NEUMAN alleges as follows for his complaint against defendants GLOBAL SECURITY SOLUTIONS and WERNER HELLMANN:

## NATURE OF ACTION

1. This is an action for defamation and tortious interference with prospective economic advantage. On or about February 19, 2021, defendant Werner Hellmann, the President and principal of defendant Global Security Solutions, Inc. ("GSS"), called several individuals, including Colin C. Conner, who maintain business relationships with the plaintiff Phil Neuman. During these calls, Hellman made slanderous statement about Mr. Neuman, including the following:

    (i) Neuman has engaged, and is currently engaging, in "illegal insurance activities" in violation of state, federal and international laws;

    (ii) Neuman is a "serial fraudster" who has repeatedly "defrauded his business partners" and "has been found guilty of fraud" by several courts;

   (iii) Most of Neuman's business ventures have failed, he is currently financially destitute and in bankruptcy;

   (iv) Neuman's home is in foreclosure; and

   (iv) Neuman is desperate for money and is likely to engage in fraudulent schemes in an effort to keep his home and avoid financial collapse.

  2. These statements are false and constitute defamation per se because they accuse Mr. Neuman of committing serious crimes and/or injure Mr. Neuman in his trade, business or profession.

  3. In addition, Hellmann told Conner said that GSS had been retained to "investigate" Mr. Neuman and to "warn" Mr. Neuman's business associates about his illegal and fraudulent misconduct. Hellman asked Conner for the names of other business associates of Mr. Neuman and he urged Conner to terminate his relationship with Mr. Neuman.

  4. Conner asked Hellman to identity his client, but he refused. Mr. Neuman, however, is currently prosecuting a lawsuit in this Court against several parties that may have retained Hellmann and GSS, *Neuman v. Garcia, et al.*, Civil Action No. 1:20-cv-10723-PKC (the "*Garcia* Action"). Upon information and belief, the defendants in the *Garcia* Action may be attempting to damage Mr. Neuman's reputation in retaliation for prosecuting that lawsuit, which asserts claims,

*inter alia*, for breach of contract, breach of fiduciary duty, conversion and fraud. Should discovery in this action confirm that belief, Mr. Neuman intends to amend this complaint to assert defamation and other claims against the defendants in the *Garcia* Action.

## THE PARTIES

5. Plaintiff Phil Neuman is a citizen of Nevada.

6. Defendant Werner Hellman is a citizen of New York.

7. Defendant Global Security Solutions, Inc. is a New York corporation headquartered in New York.

## JURISDICTION AND VENUE

8. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) because this is a civil action where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because defendant Global Security Solutions, Inc. resides, and maintains its headquarters, in this district.

## BACKGROUND

10. Mr. Neuman is a successful entrepreneur engaged in a variety of businesses. For over fifteen years, Colin C. Conner, has worked with Mr. Neuman in many of these business ventures, including ongoing businesses in Florida, Nevada and California. Mr. Conner resides in Florida.

11. At approximately 12:30 p.m. on Friday, February 19, 2021, Hellmann called Conner on Conner's cell phone. The incoming call was made from telephone number 212-624-1892, which is the landline for GSS's New York City headquarters located at 152 West 36th Street, Suite 305, New York, New York 10018.

12. Hellmann introduced himself as a former Captain in the New York City Police Department who was "investigating" Phil Neuman. He stated that his investigation had disclosed the following "facts" about Mr. Neuman:

> (i) Neuman has engaged, and is currently engaging, in "illegal insurance activities" in violation of state, federal and international laws;
>
> (ii) Neuman is a "serial fraudster" who has repeatedly "defrauded his business partners" and "has been found guilty of fraud" by several courts;
>
> (iii) Most of Neuman's business ventures have failed, he is currently financially destitute and in bankruptcy;
>
> (iv) Neuman's home is in foreclosure; and

    (iv)    Neuman is desperate for money and is likely to engage in fraudulent schemes in an effort to keep his home and avoid financial collapse.

13.    When Conner asked whether Hellmann was acting on behalf of the New York Police Department, he admitted that he was now the President of GSS and had been privately retained to "investigate" Neuman and to "warn" Neuman's business associations about Neuman's illegal and fraudulent conduct to prevent them from being "victimized."

14.    Conner asked who had retained GSS, but Hellmann refused to disclose the identity of his client. Hellman said that he had already called several of Neuman's other current and former business associates, who had confirmed the "facts" about Neuman's illegal and fraudulent activities. Hellmann also asked whether Conner was currently in contact with Neuman, to which Conner replied that he was. Hellmann urged Conner not to contact Neuman and to cut off all ties with Neuman. Hellman also asked Conner for the contact information of Neuman's other business associates of which Conner was aware.

15.    Conner advised Hellmann that he was celebrating his daughter's fifteenth birthday, did not have to time to continue the conversation and therefore ended the call. Ten minutes later, Hellmann called again, but Conner did not answer. Instead, Conner called Neuman to inform him of Hellman's call, Hellmann's

5

defamatory statements and Hellmann's efforts to disrupt Conner's business relationship with Neuman.

16. Neuman immediately called the GSS landline. An individual named Paul answered and advised Neuman that Hellmann, who was the only person at GSS with information about the so-called "investigation" of Neuman, was unavailable. Neuman left a message for Hellmann to return the call. Hours passed. Neuman called once again and reached Paul, who asserted that Hellmann was still unavailable and would return Neuman's call as soon as possible. Over five days have elapsed, however, and Hellmann has still not called Neuman.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Defamation)

17. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 16.

18. In his February 19, 2021 telephone call with Conner, Hellmann made the false and defamatory statements *set forth*, supra, at paragraphs 1 and 12 (the "Defamatory Statements"). At all times Hellmann was acting on behalf of himself and GSS.

19. The Defamatory Statements are false.

20. The Defamatory Statements expose Mr. Neuman to public contempt, hatred, ridicule, aversion or disgrace.

21. Hellmann published the Defamatory Statements to Conner and, upon information belief, to other business associates of Mr. Neuman, without privilege or authorization.

22. Hellman published the Defamatory Statements knowing they were false or with fault as judged by, at a minimum, a negligence standard.

23. The Defamatory Statements constitute defamation per se.

24. Upon information and belief, the Defamatory Statements have caused special harm to Neuman.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Advantage)

25. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 24.

26. Neuman has had an ongoing business relationship with Conner for over fifteen years.

27. Hellmann and GSS interfered with Neuman's business relationship with Conner by calling Conner on February 19, 2021 and making the false and slanderous statements set forth, *supra*, at paragraphs 1 and 12.

28. Hellman and GSS acted for a wrongful purpose and used dishonest, unfair and improper means, including publishing the false and slanderous statements set forth, *supra*, at paragraphs 1 and 12.

29. Hellmann and GSS, through their improper interference with Neuman's business relationship with Neuman, injured that relationship.

30. Upon information and belief, Hellmann and GSS interfered with Neuman's business relationships with other parties by making the same false and slanderous statements set forth, *supra*, at paragraphs 1 and 12, and by doing so injured those relationships.

## JURY DEMAND

31. Plaintiff demands a jury on all issues that may be tried by jury.

WHEREFORE, Neuman demands judgment as follows:

(i) presumed damages in an amount in excess of $75,000 arising from defendants' statements that constitute defamation per se;

(ii) special damages caused by defendants' defamatory statements in an amount in excess of $75,000 to be proven at trial;

(iii) damages arising from the injuries to Neuman's business relationships caused by defendants' interference with those relationships in an amount in excess of $75,000 to be proven at trial;

(iv) a preliminary and permanent injunction restraining defendants from publishing false and defamatory statements about Neuman;

(v) costs, including reasonable attorneys' fees, arising from this action; and

(vi) such other relief as this Court deems just.

Dated: February 24, 2021

THE GRIFFITH FIRM

By: _/s/ Edward Griffith_____
     EDWARD GRIFFITH, ESQ.
45 Broadway, Suite 2200
New York, New York 10006
(646) 645-3784 (mobile)
eg@thegriffithfirm.com

*Counsel for Plaintiff Phil Neuma*